UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY and STATE FARM FIRE
AND CASUALTY COMPANY

                    Plaintiffs,

v.

SHELBIE FROUNFELTER, et al.,

                    Defendants.

CASE NO. C16-5242BHS

ORDER GRANTING
PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY
JUDGMENT

This matter comes before the Court on Plaintiffs State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company's ("State Farm") motion for partial summary judgment (Dkt. 19). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On March 31, 2016, State Farm filed a complaint for declaratory judgment against Defendants Shelbie Frounfelter ("Frounfelter"); Rosa A. Morelos and Sergio Morelos,

individually, and the marital community comprised thereof; and Rosa Morelos as

administratrix of the Estate of M. Rosario Chacon-Cisneros (collectively "Defendants").

Dkt. 1.

On August 29, 2016, State Farm filed the instant motion seeking partial summary

judgment of no coverage.  Dkt. 19.  On September 26, 2016, Defendants responded and

moved for certification of a question to the Washington Supreme Court.  Dkt. 22.  On

September 30, 2016, State Farm replied and requested that the Court not consider

Defendants' improper cross-motion for certification.  Dkt. 25.

## II. FACTUAL BACKGROUND

The underlying facts involve a car accident caused by Frounfelter involving the

other Defendants.  On January 1, 2012, Frounfelter turned sixteen.  She acquired her

driver's license a few days after her birthday.  Frounfelter's mother, Lisa Siler, and

father, Michael Webb, split custody of Frounfelter under a parenting plan.  Under the

plan, Mrs. Siler had sole decision-making authority over Frounfelter's upbringing, Mrs.

Siler's house was Frounfelter's primary residence, and Mr. Webb has weekend and

occasional holiday visitation rights.

On August 31, 2012, Mr. Webb bought Frounfelter a 2004 Mustang convertible as

a gift.  The car was titled and registered in Mrs. Siler's name even though Mr. Webb paid

for the car.

On October 12, 2012, Frounfelter was involved in a serious accident with the car.

M. Rosario Chacon-Cisneros died from injuries sustained in the accident, and Defendants

Rosa and Sergio Morelos also sustained injuries in the accident.  The Moreloses sued

1   Frounfelter, Mrs. Siler, and Mr. Webb in state court. The jury denied the vicarious

2   liability claims against Mrs. Siler and Mr. Webb, but returned a verdict against

3   Frounfelter for $382,206 in damages. State Farm insured Mrs. Siler, and, after the

4   verdict, tendered policy limits of $50,000. This matter involves Mr. Webb's policies.

5        At the time of the accident, Mr. Webb had three policies with State Farm. First,

6   Mr. Webb had an automobile insurance policy. This policy defined an insured as Mr.

7   Webb and his "resident relatives." Dkt. 20-12 at 9. The policy provided a definition for

8   the term "resident relative" as follows:

9        *Resident Relative* means a *person*, other than *you*, who resides
        primarily with the first *person* shown as a named insured on the

10      Declarations Page and who is:
          1. related to that named insured or his or her spouse by blood,

11      marriage, or adoption. An unmarried and unemancipated child of that
        named insured or his or her spouse is considered to reside primarily with

12      that named insured while that child is away at school; or
          2. a ward or a foster child of that named insured, his or her spouse,

13      or a *person* described in 1. above.

14   *Id*. at 8.

15        Second, Mr. Webb had an umbrella policy that also insured Mr. Webb and his

16   "relatives whose primary residence is [Mr. Webb's] household." Dkt. 20-13 at 10.

17        Third, Mr. Webb had a homeowner's policy. The details of this policy are

18   irrelevant because Defendants have conceded that there is no issue of coverage under this

19   policy. Dkt. 22 at 5.

20                     **III. DISCUSSION**

21        State Farm moves for partial summary judgment seeking a declaration that there is

22   no coverage for Frounfelter's car accident under the policies State Farm issued to Mr.

Webb.  Dkt. 19.  Regarding the homeowner's policy, Defendants concede noncoverage, and, therefore, the Court grants State Farm's motion on this issue.  Finally, because the Court grants State Farm's motion on whether Frounfelter was an insured under the policies, the Court need not address whether the car was within the scope of the auto policy.

## A.      Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

1    The determination of the existence of a material fact is often a close question. The

2    Court must consider the substantive evidentiary burden that the nonmoving party must

3    meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

4    U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

5    issues of controversy in favor of the nonmoving party only when the facts specifically

6    attested by that party contradict facts specifically attested by the moving party. The

7    nonmoving party may not merely state that it will discredit the moving party's evidence

8    at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

9    *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

10    nonspecific statements in affidavits are not sufficient, and missing facts will not be

11    presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

12    **B.    State Farm's Motion**

13    State Farm argues that Mr. Webb's automobile and umbrella policies do not

14    provide coverage for injuries sustained in Frounfelter's car accident. State Farm

15    concedes that "Washington courts have not interpreted the terms 'resides primarily' or

16    'primary residence' in insurance policies." Dkt. 19 at 12. State Farm, however, contends

17    that the terms are unambiguous and the only rational interpretation of these terms

18    precludes coverage for Frounfelter under her father's policies. Dkt. 19 at 12–18.

19    Defendants counter that the terms are either ambiguous or violate public policy if

20    interpreted to preclude coverage. Dkt. 22 at 14–19. The Court will address both issues.

21

22

### 1.     Ambiguity

In Washington, interpreting insurance policies is a question of law. *Am. Star Ins.*
*Co. v. Grice*, 121 Wn.2d 869, 874 (1993), *opinion supplemented by* 123 Wn.2d 131
(1994).  Washington courts construe insurance policies as a whole, giving force and
effect to each clause in the policy. *Id.* If the policy language is clear and unambiguous,
the Court will not modify the policy or create an ambiguity. *Id.* If the policy language is
fairly susceptible to two different reasonable interpretations, it is ambiguous, and the
Court may attempt to discern the parties' intent by examining extrinsic evidence. *Id.* If
the policy remains ambiguous after resort to extrinsic evidence, the Court construes the
ambiguities against the insurer. *Id.* at 874–75.

Neither the phrase "resides primarily" nor "primary residence" is defined in the
policy.  Generally, undefined terms are given their plain, ordinary, and popular meaning
as understood by an average purchaser of insurance. *Allstate Ins. Co. v. Peasley*, 131
Wn.2d 420, 424 (1997).  When words in a policy are undefined, courts look to the
dictionary to determine the words' common meaning. *Id.* at 425–426.  Merriam–Webster
dictionary defines "resides" as, "to dwell permanently or continuously: occupy a place as
one's legal domicile."  Merriam–Webster Dictionary, Resides,
http://www.merriamwebster.com/dictionary/resides (last visited November 1, 2016).  It
defines "primarily" as, "for the most part" or "in the first place." *Id.*, Primarily,
http://www.merriamwebster.com/dictionary/primarily (last visited November 1, 2016).
Both of these definitions favor State Farm.  While Defendants argue that Frounfelter had
her own room at her father's house and kept property such as a motorbike there, the

1    record reflects that, for the most part and in the first place, Frounfelter permanently and

2    continuously occupied her mother's residence as her legal domicile.   Other than some

3    conclusory allegations, Defendants fail to contest these definitions with any evidence or

4    authority of their own.   Dkt. 22 at 18–19.   Therefore, the Court concludes that the phrase

5    "resides primarily" is not ambiguous and, under an ordinary and plain meaning, does not

6    trigger coverage under Mr. Webb's automobile policy.

7        Regarding the phrase "primary residence," the analysis is slightly different

8    because Washington courts have addressed the term "residence."   In *Pierce v. Aetna*

9    *Cas. & Sur. Co.*, 29 Wn. App. 32 (1981), the court considered the phrase "residents of the

10   same household."   The court concluded that "the following are relevant factors in

11   determining who is a resident of the same household: (1) the intent of the departing

12   person, (2) the formality or informality of the relationship between the person and the

13   members of the household, (3) the relative propinquity of the dwelling units, and (4) the

14   existence of another place of lodging."   *Id*. at 37–38.   In applying these factors to the

15   facts, the court held that the minor and father were not residents of the same household

16   because the father maintained a separate distinct household, the child was a member of

17   the mother's household, and "[t]heir visits together were infrequent and irregular."   *Id*. at

18   40–42.

19       In *Adams v. Great Am. Ins. Companies*, 87 Wn. App. 883 (1997), the court held

20   that "[t]here is no bright line test" for "the factual inquiry courts must undertake in

21   considering whether children of divorced parents are 'residents' of a particular parent's

22   household for insurance coverage purposes."   *Id*. at 890.

> It is helpful to review any parenting plan or other court orders, but the inquiry in each case is factual: Does the child regularly spend time in the household in question, such that there exists a continuing expectation of the child's periodic return on intervals regular enough that the household is the child's home during the time the child is there, as opposed to a place of infrequent and irregular visits.

*Id*. The *Adams* court concluded that the child was a resident because the "court-ordered parenting plan required Susan to 'reside with' each of her parents, and plainly contemplated that both parents would remain deeply involved in their children's upbringing," the child "was to spend at least some portion of her day with her father on 140 days of the year," and the child "had two regular places of lodging." *Id*. at 889.

In this case, the facts are closer to the *Pierce* case rather than the *Adams* case. The parenting plan dictated that Frounfelter would reside with the mother except for visits every other weekend and certain holidays on a rotating basis. Dkt. 20-2 at 2–4. While the visits were regular, it is debatable whether they were "frequent." Spending every other weekend with her father results in 52 days of contact per year, or almost a third of the contact as stated in *Adams*. Sole decision-making authority for major decisions was awarded to Mrs. Siler because the parents were opposed to mutual decision-making authority. *Id*. at 6. While Mr. Webb was involved in Frounfelter's upbringing, the fact that he had no major decision-making authority undermines a finding that he was deeply involved. Finally, whether Frounfelter had two separate places of lodging is as debatable as to whether her contact with her father was frequent. Based on these facts, it is a close call whether Mr. Webb's house is Frounfelter's residence. State Farm, however, included additional language in the contract of insurance that resolves the dispute in its favor.

1    The umbrella policy in dispute defines "insureds" as Mr. Webb and his "relatives

2   whose **primary** residence is [Mr. Webb's] household."  Dkt. 20-13 at 10 (emphasis

3   added).  Merriam–Webster dictionary defines "primary" as, "of first rank, importance, or

4   value."  Merriam–Webster Dictionary, Primary,

5   http://www.merriamwebster.com/dictionary/primary (last visited November 1, 2016).

6   The first and most important place where Frounfelter lived or stayed for most of her time

7   was her mother's house.  If anything, the evidence reflects that her father's house was at

8   most a place of temporary visitation every other weekend and on certain holidays.  State

9   Farm also argues that, under the plain meaning of the term "primary," a person may not

10   have two primary residences.  Dkt. 19 at 14 (citing *Bolin v. Progressive Northwestern*

11   *Ins. Co.*, 2009 WL 1010770, at *8 (E.D.Mo. Apr. 9, 2009)).  The Court agrees with such

12   an interpretation.  Defendants have submitted no other definition disputing this

13   interpretation or evidence.  Therefore, the Court concludes that the phrase "primary

14   residence" is not ambiguous and precludes coverage under Mr. Webb's umbrella policy.

15       **2.    Public Policy**

16    The Washington Supreme Court has held that "limitations in insurance contracts

17   which are contrary to public policy and statute will not be enforced, but otherwise

18   insurers are permitted to limit their contractual liability."  *State Farm Gen. Ins. Co. v.*

19   *Emerson*, 102 Wn.2d 477, 481 (1984) (citing *Mut. of Enumclaw Ins. Co. v. Wiscomb*, 97

20   Wn.2d 203, 210 (1982)).  "[E]xclusions that have been held violative of public policy

21   generally have been those manifesting no relation to any increased risk faced by the

22

1  insurer, or when innocent victims have been denied coverage for no good reason."

2  *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 343–44 (1987).

3         In this case, Defendants argue that the attempt to exclude children who do not

4  primarily reside in the insured's household is void as a matter of public policy.  Dkt. 22 at

5  14.  Defendants, however, fail to show that this limitation has no relation to an increased

6  risk for State Farm or precludes coverage for innocent victims for no good reason.

7  Instead, State Farm correctly points out that its language limits the drivers it will insure,

8  other than the named insured.  Dkt. 25 at 6.  Such a limitation does not violate any

9  identified public policy.  Moreover, the language limits the liability on all victims when

10  the accident is caused by a person who does not primarily reside with the named insured.

11  This is not discriminatory because it applies to all victims of certain drivers.  It does not

12  provide insurance for some victims yet preclude coverage for other victims.  Therefore,

13  the Court concludes that the disputed language and resulting limitations do not violate

14  public policy.  Even if Defendants' motion to certify a question to the Washington

15  Supreme Court was not procedurally improper, it fails on the merits.

16                                      **IV. ORDER**

17         Therefore, it is hereby **ORDERED** that State Farm's motion for partial summary

18  judgment (Dkt. 19) is **GRANTED**.

19         Dated this 3rd day of November, 2016.

20

21                                      _____
                                        BENJAMIN H. SETTLE
                                        United States District Judge

22